IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:14cv189 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| STEVEN R. HINZ, et al. | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

On October 12, 2012, Defendant Steven R. Hinz pleaded guilty to one count of conspiracy to defraud the United States, 18 U.S.C. § 371, fifteen related counts of aiding and assisting in the preparation of a false tax return, 26 U.S.C. § 7206(2), and one count of making a false return, 26 U.S.C. § 7206(1). Doc. 48-2, p. 7, ¶¶ 39, 40 (undisputed material facts). Based on the foregoing guilty pleas, Hinz's admissions, and other undisputed material facts, Plaintiff United States now moves for summary judgment pursuant to Fed. R. Civ. Pro. 56. (Doc. 48-1). Specifically, the United States seeks an injunction against Hinz pursuant to 26 U.S.C. § 7402(a), 7407, and 7408, enjoining Hinz from (1) preparing federal tax returns for anyone other than himself, (2) promoting the abusive scheme that he used to prepare and file false federal tax returns, and (3) engaging in other conduct that violates the internal revenue laws. Doc. 48-1, pp. 1-2. Hinz did not file a brief in response to the United States' motion. For the reasons explained below, there is no genuine issue of material fact; Plaintiff's motion should be granted; and a permanent injunction should be entered against Hinz.

### I. Background[1]

---

[1] Plaintiff United States filed a Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment. Doc. 48-2. The facts were taken from documents submitted in support of the United States' Motion and

1

Hinz operated a real estate business in Youngstown, Ohio. Doc. 48-4, pp. 3-4, ¶ 21. (plea agreement). He also offered tax services to his customers and employed a number of individuals for the purpose of carrying out tax services for his business. Doc. 48-4, p. 4, ¶ 22. In 2009, Hinz and his employees began filing fraudulent federal income tax returns for themselves and their customers using what is known as the "OID process." Doc. 48-2, pp. 1-2, ¶¶ 3-5, 7. The process involved preparing false Internal Revenue Service ("IRS") Forms 1099-OID and 1099-A. Doc. 48-2, p. 2, ¶ 7. The Forms 1099-OID falsely reported that financial institutions, creditors, and other entities had withheld large amounts of federal income tax with respect to falsified or non-existent income. Doc. 48-2, p. 2, ¶ 8. Based on these fraudulently reported withholdings, Hinz or his employees filed false federal income tax returns that claimed large tax refunds. Doc. 48-2, pp. 2-3, ¶ 9. Neither he nor his customers were entitled to these refunds. Doc. 48-2, pp. 2-3, ¶ 9.

Hinz promoted the OID process to his customers and employees and to individuals he met through seminars and organizations. Doc. 48-2, p. 3, ¶ 11. He gave his customers the choice of having their returns prepared the conventional way or using the fraudulent OID process. Doc. 48-2, p. 3, ¶ 15. He informed his customers of the tax benefit they would receive using the fraudulent OID process compared to the conventional process. Doc. 48-2, p. 3, ¶ 16. Occasionally, customers were told that if they chose the OID process, they, alone, would be liable for any consequences with the IRS. Doc. 48-2, p. 3, ¶ 17.

Hinz instructed one of his employees, Ms. Heather English, to arrange with an outside company to electronically transmit approximately 411 sets of false Forms 1099-A and/or Forms 1099-OID to the IRS for about 57 customers. Doc. 48-2, p. 4, ¶ 19. After the IRS rejected some

---

are undisputed. *Id*. When Hinz pleaded guilty to all charges in his criminal case, he affirmed that the factual allegations against him were true and accurate. *Id*. at p. 7, ¶ 41; Doc. 48-4 (Factual Basis for Hinz's Guilty Plea).

of the fraudulent filings, Hinz repeatedly directed English to have the company re-submit the false Forms and English repeatedly complied.  Doc. 48-2, p. 4, ¶¶ 20-21.

Hinz charged each customer for the preparation of his or her OID process returns.  Doc. 48-2, p. 5, ¶ 24.  He required an upfront fee plus a percentage of the "tax benefit"—i.e., the fraudulent refund—obtained using the OID process.  Doc. 48-2, pp. 5-6, ¶ 25.  Hinz paid English to prepare the false forms and tax returns supporting the OID process.  Doc. 48-2, p. 6, ¶ 28.  In at least one instance, when the IRS sought to recover an improper refund from two of Hinz's customers, the customers asked Hinz to return the fee they paid him; he refused.  Doc. 48-2, p. 6, ¶¶ 32-33.   At times, Hinz told his customers to hide any portion of their OID refund that they had not already spent.  Doc. 48-2, p. 6, ¶ 34.

Overall, Hinz's tax scheme reported approximately $13 million in false income and nearly as much in false withholding, and attempted to obtain more than $31.5 million in improper refunds.  Doc. 48-2, p. 6, ¶ 35.  The IRS issued at least $577,622 in improper refunds before it discovered Hinz's fraud.  Doc. 48-2, p. 6, ¶ 36.

On December 14, 2011, a federal grand jury indicted Hinz on one count of conspiracy to defraud the United States, 18 U.S.C. § 371, fifteen related counts of aiding and assisting in the preparation of a false tax return, 26 U.S.C. § 7206(2), and one count of making a false return, 26 U.S.C. § 7206(1).  Doc. 48-2, p. 7, ¶ 39.  During his trial, Hinz refused to take responsibility for his actions and blamed his customers and the IRS for any tax inconsistencies.  Doc. 48-2, p. 7, ¶ 37.  He ultimately pleaded guilty to all the criminal charges on October 12, 2012.  Doc. 48-2, p. 7, ¶ 40.  When he entered his guilty pleas, he affirmed that the factual allegations supporting the "tax fraud" counts of the indictment against him were "true and accurate."  Doc. 48-2, p. 7, ¶ 41. When the district court gave him an opportunity "to orally add to the factual basis" regarding his

tax crimes, his defense attorney—after consulting with Hinz—represented that Hinz had nothing to add. Doc. 48-2, p. 8, ¶ 42. When Hinz disputed any fact during the plea hearing, he placed that dispute on the record. Doc. 48-2, p. 8, ¶ 43. He did not object to any of the facts he cited during his plea hearing. Doc. 48-2, p. 8, ¶ 44.

The district court sentenced Hinz to 108 months in prison. Doc. 48-2, p. 8, ¶ 45. In support of the sentencing decision, the court commented on Hinz's "complete disregard…for the laws of the United States;" Hinz's belief that "he is above the law;" Hinz's "complete lack [of] remorse" for his conduct; and the "likelihood of recidivism based upon all of [Hinz's] actions and statements." Doc. 48-2, p. 8, ¶ 46. Throughout the process, Hinz would not acknowledge that he is a person subject to the laws of the United States and refused to recognize the authority of the United States Courts. Doc. 48-2, p. 8, ¶ 47.

## II. Legal Standard

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Judgment for the movant is proper when the facts as to each and every essential element are undisputed. Celotex Corp, 477 U.S. at 323 (1986).

Once the moving party has shown that there is no genuine issue of material fact as to their claim, the non-moving party must then come forward with specific facts to demonstrate that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Industrial Co. v. Zenith Radio

4

*Corp.,* 475 U.S. 574, 586 (1986). Mere doubt or speculation will not carry the non-moving party's burden to defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 247-48. The Court must draw from the evidence produced by the non-moving party all justifiable inferences in favor of the non-movant. *Id*.

### III. Analysis

The United States asserts that undisputed material facts entitle it to judgment in its favor and a permanent injunction against Hinz. Doc. 48-1, p. 3. It moves for injunctive relief under 26 U.S.C. §§ 7402, 7407, and 7408. *Id*. Because the statutes each provide for injunctive relief, the United States does not need to satisfy the traditional elements for an injunction. *See United States v. ITS Financial,* LLC, 592 Fed.Appx. 387, 399-400 (6th Cir. 2014) ("Section 7402(a) authorizes district courts to issue injunctions 'as may be necessary or appropriate for the enforcement of the internal revenue laws.' As we have previously held regarding § 7408, because the statute expressly authorizes the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied. This standard…has also been applied to determine whether an injunction is appropriate under § 7407."). Rather, the United States only needs to establish what the statute requires—that specified unlawful conduct has occurred and that injunctive relief is necessary or appropriate to prevent the recurrence of such conduct. *United States v. Gleason,* 432 F.3d 678, 682 (6th Cir. 2005). As set forth more fully below, the United States has demonstrated the requirements of all the statutory provisions. Accordingly, the undersigned recommends that the Court grant the United States' Motion for Summary Judgment and enter the United States' Proposed Order (Doc. 48-9) permanently enjoining Hinz.

**A. Hinz cannot dispute that he abused the federal income tax laws.**

The United States asserts that Hinz is barred from disputing the facts that show he abused the federal income tax laws under the doctrine of collateral estoppel.  Doc. 48-1, p. 4.  The doctrine of collateral estoppel applies when three requirements have been met: "(1) the issue in the current action and the prior action are identical; (2) the issue was actually litigated; and (3) the issue was necessary and essential to the judgment on the merits."  *United States v. Beaty*, 245 F.3d 617, 624 (6th Cir. 2001) ("It is well established that a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding."); *Gray v. Comm'r of Internal Revenue*, 708 F.2d 243, 246 (6th Cir. 1983) ("A guilty plea is as much a conviction as a conviction following jury trial.").  Here, Hinz's guilty plea and subsequent conviction act as an estoppel in favor of the United States in the current civil proceeding.  *See id*.  The same facts that led to Hinz's conviction under 26 U.S.C. § 7206(2) are at issue here, the issue was actually litigated in Hinz's prior case, and the issue was essential to the judgment against him.  *See Beaty*, 245 F.3d at 624; *Richey v. United States*, 9 F.3d 1407, 1411 (9th Cir. 1993) (conviction under § 7206(2) estopped tax return preparer from denying willfulness under a subsequent civil action). Therefore, Hinz is estopped from denying the undisputed facts that show he abused the federal income tax laws.  *See id*.; *Beaty*, 245 F.3d at 624.

Furthermore, Hinz's guilty plea is an admission of all the facts set forth in the indictment that support the elements of the crime charged.  *See United States v. Louchart*, 680 F.3d 635, 637 (6th Cir. 2012); *McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("a guilty plea is an admission of all the elements of a formal criminal charge.").  When Hinz pleaded guilty, he explicitly admitted the facts set forth in the factual basis for his plea agreement.  Doc. 48-4, p. 3,

6

¶ 20.[2] (plea agreement). Thus, because Hinz has admitted facts showing he abused the federal income tax laws, he is barred from disputing such matters. *Louchart*, 680 F.3d at 637.

### B. Because Hinz abused income tax laws, he should be enjoined under §§ 7402(a), 7407, and 7408.

#### 1. Hinz should be enjoined under § 7402(a).

The plain text of 26 U.S.C. § 7402(a) gives the courts broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws . . . in addition to and not exclusive of any and all other remedies. . ." *ITS Financial, LLC*, 592 Fed.Appx. at 394 (quoting 26 U.S.C. § 7402(a)). The statute is "essentially a catch-all provision that grants federal courts the authority to issue any remedy that may be necessary and appropriate 'for the enforcement of the internal revenue laws.'" *United States v. Allen,* 2014 WL 5305518, at *4 (S.D. Ohio Oct. 14, 2014). "The language of § 7402(a) manifest[s] a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *United States v. Elsass,* 978 F. Supp. 2d 901, 939 (S.D. Ohio 2013) (quoting *Brody v. United States,* 243 F.2d 378, 384 (1st Cir. 1957)). For example, § 7402(a) has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute. *ITS Financial, LLC*, 592 Fed.Appx. at 394.

Hinz's unlawful conduct clearly falls within the evils that the broad statutory language of 7402(a) seeks to prevent. Hinz engaged in, and encouraged others to engage in, a scheme to

---

[2] Hinz's plea agreement reads:

> Defendant agrees that the following summary fairly and accurately sets forth Defendant's offense conduct, including stipulated uncharged conduct, and a factual basis for the guilty pleas. Defendant further agrees that the facts set forth in the summary are true and could be established beyond a reasonable doubt if the cases were to proceed to trial[.]

Doc. 48-4, p. 3, ¶ 20.

7

prepare and file false federal income tax returns.  Doc. 48-4, p. 9, ¶ 31.  He submitted about 411 sets of the fraudulent forms and related processing documents showing a total of approximately $13 million in false income, and sought more than $3.15 million in improper refunds.  Doc. 48-4, p. 12, ¶ 41d.  He collected a total of $577,622 in improper refunds before the IRS discovered his fraud.  Doc. 48-4, p. 14, ¶ 44.  He told his customers to hide any portion of their refund they still had in their possession.  Doc. 48-4, p. 15, ¶ 48.

Throughout Hinz's criminal proceedings he refused to acknowledge that he is a person subject to the laws of the United States, including IRS laws, and refused to recognize the authority of the United States Courts.  Doc. 48-8; *see United States of America v. Hinz et al.*, Crim. Case No. 4:11-cr-00586, Doc. 145, p 20 (Transcript of Sentencing Proceedings).  He displayed a complete disregard for the laws of the United States and a belief that he is above the law; for example, during Hinz's sentencing, the trial court noted his complete lack of remorse and the likelihood of recidivism based upon all of his actions and statements.  Doc. 48-8; *see United States of America v. Hinz et al.*, Crim. Case No. 4:11-cr-00586, Doc. 145, pp. 18-19.  It is, therefore, likely that he will continue to promote and administer the OID scheme absent a permanent injunction.  Accordingly, the injunction against Hinz is necessary and appropriate pursuant to § 7402(a).

### 2. Hinz should be enjoined under §§ 7407 and 7408.

Sections 7407 and 7408 allow the Court to grant an injunction against a person who engaged in specified conduct and injunctive relief is appropriate to prevent the recurrence of such conduct.  As described below, Hinz engaged in conduct prohibited by these sections and injunctive relief is appropriate to prevent him from further engaging in such conduct.

### a. Hinz engaged in conduct prohibited by § 7407.

8

Section 7407 allows the Court to grant an injunction against any person who is a tax return preparer to prohibit such person from further engaging in certain conduct that abuses the internal revenue laws.  26 U.S.C. § 7407(b).  An injunction is appropriate to prevent the recurrence of such conduct.  *Id.*  Further, if the Court determines that a person acting as a tax return preparer has "continually or repeatedly engaged in [the specified prohibited conduct] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of [the Internal Revenue Code ("IRC")]," it may enjoin the person from acting as a tax return preparer.  26 U.S.C. § 7407(b).  Hinz engaged in such abusive conduct and therefore should be enjoined under § 7407.

A tax return preparer is "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by [the IRC] or any claim for refund of tax imposed by [the IRC]."  26 U.S.C. § 7701(a)(36)(A).  The term "person" is defined broadly by the IRC to include individuals, partnerships, companies, and corporations.  *See id.*, § 7701(a)(1).  "The preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund."  § 7701(a)(36)(A).  The reason "tax return preparer" was defined broadly "was to ensure that the person who makes the decisions and calculations involved in preparing a particular return will be considered the preparer of that return, even if that person 'does not actually place the figures on the lines of the taxpayer's final tax return.'"  *Elsass,* 978 F. Supp. 2d at 909-910 (quoting *Goulding v. United States,* 957 F. 2d 1420, 1424-25 (7th Cir. 1992) (quoting, in turn, H.R. Rep No. 658, 94th Cong., 2d Sess. 275, reprinted in 1976 U.S.C.C.A.N. 3171)).  "Tax return preparer" includes employers whose employees prepare tax returns.  *Id.* at 911.

9

Individuals may be enjoined under § 7407 when they have, in relevant part: (1) engaged in any conduct that is subject to criminal penalty under the Internal Revenue Code; or (2) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws; and (3) injunctive relief is appropriate to prevent the recurrence of such conduct. 26 U.S.C. § 7407(b)(1)(A)&(D), (b)(2).

Hinz pleaded guilty to fifteen counts of violating 26 U.S.C. § 7206(2), aiding and assisting the preparation of false federal income tax returns. Doc. 48-2, p. 7, ¶ 39. He admitted to preparing OID returns and other false IRS forms in exchange for money. *Id*. ¶ 31. He also admitted to hiring and paying English to prepare OID returns, thus meeting the definition of "tax return preparer" under § 7701(a)(36)(A). He has clearly engaged in conduct that is subject to criminal penalty under the Internal Revenue Code. *See* § 7407(b)(1)(A). He also engaged in a variety of fraudulent or deceptive conduct that substantially interfered with the proper enforcement of the internal revenue laws, *see* § 7407(b)(1)(D), such as repeatedly re-submitting false 1099-A Forms, refusing to refund fees when his customers were asked to repay the IRS, and advising his customers to hide their false refunds from the IRS. Doc. 48-5, p. 2, ¶ 15. (Declaration of Heather English); Doc. 48-4, p. 15, ¶¶ 46, 48. As such, Hinz engaged in an excess of conduct prohibited by § 7407.

### b. Hinz engaged in conduct prohibited by § 7408.

In addition to § 7407, the Government also urges the Court to enjoin Hinz under § 7408. Section 7408, in relevant part, allows a court to enjoin an individual from further engaging in conduct prohibited by §§ 6700 or 6701, or any other activity subject to penalty under [the IRC], if doing so is "appropriate to prevent the recurrence of such conduct." 26 U.S.C. § 7408(b)(2); 26 U.S.C. § 6700; *see Gleason,* 432 F. 3d at 682.

10

Section 6700 relates to the promotion of abusive tax shelters and imposes a penalty on any person who: (1) organizes or participates in the sale of a plan or arrangement, (2) makes statements or causes another person to make statements with respect to any tax benefit in connection with that organization or sale, (3) and knew or had reason to know that his statements were false or fraudulent as to any material matter. § 6700(a); *see Gleason*, 432 F. 3d at 682. "Statements with a 'substantial impact' on the decision to purchase a tax package pertain to a material matter." *Id*. at 683. Under § 6700, "any 'plan or arrangement' having some connection to taxes can serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation." *Elsass*, 978 F. Supp. 2d at 934.

Here, Hinz engaged in an elaborate and well-planned scheme to prepare and file false federal income tax returns for his customers from whom he collected a fee for his services. Doc. 48-4, pp. 9-10, ¶¶ 31, 37. He promoted the scheme and kept the taxpayers advised of developments by conference calls, group emails, and individual conversations. *Id*. p. 10, ¶ 34. He selected a few returns to file as test cases, and when the IRS subsequently issued refunds based on those false returns, Hinz informed clients of the refunds as proof that the process worked. *Id*., ¶ 35. Hinz's conduct more than satisfies the broad definition of "plan" under § 6700; *see Gleason*, 432 F.3d at 682.

Hinz made and caused others to make statements to his customers with respect to large tax refunds using the OID process scheme, which he promoted and collected money from. Doc. 48-3, p. 2, ¶ 5 (Indictment); 48-4, p. 11, ¶ 37. He knew or had reason to know that these statements were false and fraudulent. Hinz pleaded guilty to fifteen counts of aiding and assisting in the preparation of a false or fraudulent tax return, hence he has admitted that the

returns were false. Doc. 48-4, p. 3, ¶ 20; *see Louchart,* 680 F.3d at 637. He gave his customers the option of having their returns prepared the conventional way or using the fraudulent OID process, thus he knew that what he was doing was unlawful. Doc. 48-4, p. 11, ¶ 38. He informed his customers that they would receive a larger refund using the OID process compared to the conventional return. *Id.* Further, when the IRS rejected some of the false forms that were submitted, Hinz directed his employee, English, to re-submit the false forms repeatedly until they were accepted. Doc. 48-3, p. 7, ¶ 23; 48-5, p. 2, ¶ 13. He also advised his customers to hide any portion of their OID refunds they did not immediately spend. Doc. 48-4, p. 15, ¶¶ 46, 48. *See Gleason,* 432 F.3d at 682.

Hinz had reason to know that his statements were false or fraudulent as to a material matter. Factors relevant to this question includes: (1) the defendant's level of sophistication and education; (2) the defendant's familiarity with tax matters; and (3) the extent of the defendant's reliance upon knowledgeable professionals. *Gleason,* 432 F.3d at 683. The Court considers "what a reasonable person in [his] subjective position would have discovered." *United States v. Campbell,* 897 F.2d 1317, 1321-22 (5th Cir. 1990).

Here, Hinz has not asserted that he relied upon knowledgeable professionals, but rather held himself out as an expert tax return preparer when he promoted the fraudulent OID process. Doc. 48-4, p. 10, ¶¶ 33-34; Doc. 48-5, p. 3, ¶ 19. He explained to his customers how the process would provide large federal income tax refunds. Doc. 48-4, p. 10, ¶¶ 33-34; Doc. 48-5, p. 3, ¶ 19. He instructed his customers what documents to prepare and provide to him to support their OID process returns. *Id.* ¶ 40; *see also* 48-5, p. 2, ¶ 10. Hinz was very familiar with tax matters as he was providing tax services to his customers as early as 2009. Doc. 48-5, p.1, ¶ 6. Hinz learned about the fraudulent OID process from seminars he had attended. *Id.* ¶ 7. *See Gleason,*

432 F.3d at 683. Further, promoters such as Hinz are charged with knowledge of the actual rules that govern the tax benefits they promote. *See United States v. Stover*, 650 F.3d 1099, 1107 (8th Cir. 2011). Hinz's false statements pertained to a material matter. His statements to his customers regarding the large tax benefits they would receive by using the OID process undoubtedly influenced individuals to partake in his scheme. *See Gleason*, 432 F. 3d at 683.

Section 6701 creates a penalty for any person:

    (1)    who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim or other document,
    (2)    who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
    (3)    who knows that such portion (if so used) would result in an understatement of the liability for tax of another person.

26 U.S.C. § 6701(a). As detailed above, Hinz knew that the federal income returns and Forms 1099 he prepared and filed, or instructed others to prepare and file, contained false statements of income withholdings which would result in a substantial understatement of his customers' tax liabilities. 26 U.S.C. § 6701(a). Doc. 48-4, pp. 9-14, ¶¶ 31, 41-43. As such, Hinz clearly engaged in conduct prohibited by § 7408.

### c. An injunction is appropriate under §§ 7407 and 7408 to prevent Hinz from engaging in prohibited conduct.

In determining the need for an injunction to prevent future recurrence of violations under §§ 7407 and 7408, a court should consider various factors, including, but not limited to: (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that

defendant's occupation would place him in a position where future violations could be anticipated. *Gleason,* 432 F. 3d at 683.

Taking all the above stated factors into consideration, injunctive relief is appropriate in this case. The government was severely harmed by Hinz's OID process scheme and suffered a loss of $577,622 in fraudulent tax refunds. Doc. 48-4, p. 14, ¶ 44. The effort spent in seeking to recover the refunds issued to Hinz and his customers cost the IRS valuable resources and time.[3] Over and above that, Hinz advised his customers to hide the refunds they received from the IRS. Doc. 48-3, p. 12, ¶ 37. Hinz's conduct undermines the authority and administration of the United States' tax system and encourages others to pursue schemes such as his. *See Gleason,* 432 F. 3d at 683.

Hinz promoted the OID process scheme to multiple individuals and charged a fee for his services. Doc. 48-3, pp. 4-5, ¶¶ 10, 14; *see also* Doc. 48-4, pp. 10, 16, ¶¶ 33, 37. He initiated the OID process, which he had learned about from seminars he attended. Doc. 48-5, p.1, ¶¶ 6-7. He hired individuals to carry out the scheme and instructed them on how to prepare the false Forms. Doc. 48-5, p. 2, ¶¶ 12-13. He and his employees persuaded numerous individuals to file OID tax returns. Doc. 48-3, p. 4, ¶ 9; *see also* Doc. 48-4, p. 10, ¶ 32. Thus, Hinz participated extensively in the fraudulent scheme. *See Gleason,* 432 F. 3d at 683.

The egregiousness of Hinz's conduct is amplified by the fact that he continued to file false federal income tax returns in the face of mounting IRS concerns. Doc. 48-3, p. 7, ¶ 23. Moreover, he was asked by some of his customers to return a portion of the money owed to the IRS, which he refused to do. Doc. 48-4, p. 15, ¶ 48. In fact, Hinz blamed his customers and the IRS for the results of his OID process scheme. As the district court noted at his criminal

---

[3] For example, when the IRS sought the return of OID refunds it had previously issued to Hinz and his customers, Hinz advised his customers to submit frivolous correspondence and documents to the IRS. Doc. 48-3, p. 8, ¶ 26.

14

sentencing, he displayed complete disregard for the laws of the United States and denied that he is subject to the laws of the United States.  Doc. 48-8; *United States of America v. Hinz et al.*, Crim. Case No. 4:11-cr-00586, Doc. 145, p 20.  He showed no remorse for his conduct and the likelihood of recidivism based upon his actions and statements is high.  Doc. 48-8; *United States of America v. Hinz et al.*, Crim. Case No. 4:11-cr-00586, Doc. 145, p 20.  *See Gleason*, 432 F. 3d at 683.  Therefore, an injunction is appropriate under to §§ 7407 and 7408 to prevent Hinz from further engaging in prohibited conduct.  As noted, Hinz did not respond to the Government's Motion for Summary Judgment; he does not dispute any allegations therein.  Accordingly, the Court should grant the United States Motion for Summary Judgment and issue an injunction against Hinz.

### IV. Conclusion

For the reasons stated above, the United States is entitled to broad relief against Hinz in order to prevent him from interfering with the proper administration of the United States' income tax system.  It is therefore recommended that the Court: (1) enter summary judgment in favor of the United States and (2) issue permanent injunctive relief pursuant to §§ 7402, 7407, and 7408.  *See* Doc. 48-1 (United States' Proposed Order).

Dated: July 29, 2015

_____
Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

15